Good morning, Your Honors. Gary Ehrman on behalf of Petitioner. Mr. Ye, I would request four minutes. Okay. Keep your eye on the clock. Yes, Your Honor. Thank you. This case is before this court because of several errors in law that the agency made in upholding the immigration's denial of the petitioner's application for asylum. But we're going to focus on one main issue because I think that will resolve the case and allow us to move forward. The Ninth Circuit last year in the matter of lay, L-A-I, held that an agency's adverse credibility determination was not supported by substantial evidence where it was based on testimony elicited during cross-examination that didn't directly concern the petitioner but instead concerned persecution of his wife. This court found that the petitioner did not rely on that testimony to establish his own eligibility for asylum. That's what this court held last year in lie, L-A-I. The facts are analogous in our case to that. My client, Mr. Ye, claims that in May of 2004, he went to the family planning office to apply for a marriage certificate. He was denied. He was told he's not old enough. Then he was told that you and your fiance are the target of our family planning laws and you must submit and file a written statement promising not to get pregnant, not to reside together, and also pay a 10,000 yuan security deposit. My client, Mr. Ye, disagreed with the family planning law and subsequently he was beaten, kicked, and detained for two days. That is what his claim for asylum is based upon. Period. Everything that happened after that, August of that year when his girlfriend got pregnant, was forced to undergo abortion, does not provide him eligibility for asylum. The BIA overturned the IJ finding on demeanor, said there's nothing in the record that shows anything inconsistent or lacking in candor in his demeanor. And therefore, the BIA overturned that issue. Well, that was the only negative credibility finding that we can attach to the petitioner regarding his claim for asylum based upon being beaten and detained for not wanting to comply with the family planning law. And that's where the analysis ends because the BIA already overturned the IJ and said there's no negative credibility finding on that issue. Of course, the IJ went on to find two other issues saying I don't think there's enough specificity in how the government discovered your girlfriend's pregnancy. I don't think you've supplied corroborating evidence because your mother or your father or your sisters didn't write letters. But these really aren't the issues that the court needs to address. The court needs to address is, What other things does Mr. Yee say happened to him as a consequence beyond his narrative of the two-day detention and beating? The only thing else that happened to him was one of the officers in the family planning that came after him was allegedly hurt when he fell down. So he pursued Mr. Yee saying you need to pay for my medical bills. You need to satisfy me and pay me money for my mental anguish. That was the only other claim he made. That in and of itself is not enough to go forward on a claim for asylum. How severe was the beating? So assuming that we set aside the adverse credibility finding, did it rise to the level of persecution? I would say yes. Under... I'm sorry, Ron, I'm looking for my notes. Under the case of Guo, GUO versus Ashcraft 2004, the Ninth Circuit held the applicant was detained for a day and a half, struck twice in the face, kicked in the stomach in order to do push-ups until collapsed. In that case, the court found this rose to the level of persecution. The nexus is... Did the BIA reach that question? The BIA did not reach that question. So if we were to set aside the adverse credibility finding, we would probably have to send back for that issue? I think it needs to be sent back for that issue and then with instructions to the BIA to send it back to the IJ because it was actually IJ who didn't decide, didn't determine if these actions in and of itself rose to the level of persecution to warrant... Well, I think we'd let the agency sort out which of the two would do that. Counsel Judge Gould, if I could interject a question to you. Yes, sir. I had the impression that the agency was somewhat concerned with lack of plausibility of the basic story. And one of the bases for that was that they thought after Yi and his girlfriend or fiance had made these arrangements to follow family planning policies, that she went to a hospital to get an abortion. And the agency thought that's not plausible because how could she go to a state hospital or something like that? And the whole thing sounded sort of speculative to me. I don't know if hospitals in that area are all state or if there's a mixture of state hospitals and private. But I wondered how do you, what's your answer or how do you address that issue? Well, I would follow up on the court's analysis saying it's speculative because there's simply nothing in the record that says, that indicates state or not or private hospitals work in conjunction with keeping records of everybody who comes into the hospital and merges that and confirms it. Merges that information with family planning. That would basically be unrealistic. That would assume that some very advanced computer software system exists in the Chinese hospitals where every single patient that came in, their data would come up knowing how many children they had, where they live, are they allowed to have more children. There's nothing in the record, Your Honor, that confirms that and it is speculative. But I would take one step further and say that the BIA indulged in improper fact finding because what the IJ actually said was there was no specificity regarding why the girlfriend went to the state hospital. The BIA are the ones who added that it's not plausible. Let me ask you the following. I realize we're cutting into the time you sought to reserve for rebuttal, but we'll make sure you get a chance to respond after the government speaks. I've seen a lot of these forced abortion cases or family planning cases. I've never seen one in which the adverse action against the husband or father takes place at such an early stage. It typically takes place at about the time when the forced abortion takes place. This one doesn't ring true to me, that he says I don't like your policy and they detain him for two days and beat him up. I would agree with the Court. I've been representing clients for approximately 15 years from China regarding family planning and forced abortions. My client, Mr. Yi, actually stood up and voiced his objection at the first onset of being told what the family planning law is and how it applies to him. Normally in these cases it's not until the state takes action against the person that they respond. But with that said, we have to take each case on its own and each petitioner on its own. And he was unique in his protest, and there was nothing in the record that indicated that that part of his testimony was at all not credible. Do we have any medical support, anything beyond his bare testimony with respect to that beating? We do not. Mr. Yerman, Judge Gould mentioned one of the two bases for the adverse credibility finding, that being the issue of, you know, which hospital his girlfriend went to. The other basis was the fact that he had, Mr. Yi had failed to mention this period of time that he'd been in hiding on his asylum application. What's your position on that credibility finding on that issue? Our position is that it's not a material fact that should be looked at as why. Why wasn't this not on your statement, if it's so material to your claim? Our position is it's not material to his claim. He was asked about it. He provided a detailed answer. But it was really only two questions. And then if you look in the transcript, then the government moves on. They just simply ask, well, how come you didn't put it down? He explained it and moved on. So he provided a response to why it wasn't on his statement. So it was more in the nature of an omission as opposed to an affirmative representation. That's correct. We agree with that position. Yes. Does the fact that he was in hiding make his case any stronger? No, not at all, because he was only in hiding from this supposedly one officer who wanted to get compensation for his anguish. That doesn't arise to the level of one of the five grounds for asylum. Okay. Let's have him to government, and then we'll put some time on the phone. May it please the court. Lindsay Corliss for the respondent. This court should deny the petition for review and uphold the agency's decisions denying asylum, withholding of removal and cat protection. This is a post real ID act adverse credibility case. And in this case, the agency relied on three specific cogent reasons for denying petitioners claim based on adverse credibility. I'll discuss each in turn. First, the agency properly found that petitioner omitted a material element of his claim in his asylum application. Now, petitioner submitted in the five months he was in hiding. Yes. Isn't the Ninth Circuit law on this subject pretty clear that omissions cannot be the basis for these sorts of adverse credibility determinations? In pre real ID act cases, that is true. However, this is a post real ID act case. And in post real ID act cases, omissions are a proper basis for finding that a petitioner is not credible. And in this case, this was a material omission. Counsel, Judge Gould, let me judge Gould if I could ask you a question on that. We just heard the petitioner argue that the fact his client was in hiding did not add anything to his application. Because he was in hiding because he didn't want to pay money to one guy who had been shoved around and wanted compensation. And why isn't that a permissible answer to your question? To say he made a material omission? Because it sounds like it may not even be a relevant omission. Petitioner's story regarding this one officer is actually a central basis of his claim. He's saying that when he went to make his other resistance to the family planning policy involving this family planning official, that he and that official fought and he was eventually detained based on this resistance to the family planning policy. So this is an individual who's involved with the family planning policy claim. Additionally, petitioner's burden is to show that he has a well-founded fear of future persecution. So it makes a very big difference whether the five months prior to him coming to the United States, he was sitting at home and he was safe and no one was hurting him, in that five months before he came to the United States. However, petitioner testified in court after not mentioning this on his asylum application, that he was so fearful of these Chinese family planning officials, particularly this one individual who he stated had ties to people higher up in the government. He was so fearful that this person and this person's connections would harm him, that he actually had to leave home for five months and live in hiding. Now that's a significant factor in whether or not the immigration judge might find that he has a well-founded fear of future persecution in China. So our position is that that was a material element that was omitted from petitioner's application. Okay, moving on to a second specific cogent reason for the agency's finding. Now the agency properly relied on the fact that a central aspect of petitioner's claim was implausible. Now petitioner was the burdened party in this case. And he had to show through consistent and persuasive testimony that each key element of his claim was true. And petitioner testified that in May of 2004, he and his girlfriend were brought before the family court. They were brought before the family planning committee. She was made to sign a letter of guarantee stating that they would not get pregnant. They were fined what he said a guarantee fee. They had to pay $10,000, 10,000 yuan in order to guarantee that they were not going to become pregnant in the future. And this is when the altercation with this individual and the resulting detention occurred. Now a mere three months after that, petitioner states that his girlfriend went to the hospital to find out if she was pregnant. And at that point the family planning officials forced her to have an abortion. So a central aspect of petitioner's claim that he suffered this persecution has to do with how the government would have found out that his girlfriend was pregnant. Now I know that there's been some discussion about whether or not, there was speculation as to whether or not the hospital indeed told the family planning officials that the girlfriend was pregnant. We can only look at what petitioner stated himself in order to know how the government would have found out about this pregnancy. And petitioner is silent on how that happened in his application. Now during direct examination he again is asked to explain this story. And you can see on page 142 of the record, this is the exchange that occurs. After he explains that his girlfriend is feeling a little bit nauseous and she's lost her appetite, he says, so she went to the hospital to check and then found out she was pregnant. At that point his counsel asked, what happened once your girlfriend found out that she was pregnant? And he responds, well then the neighborhood committee people and the birth control office staffs came to my girlfriend's place and then grabbed her to the hospital to undergo the abortion. There is no detail as to how these officials came to learn of this. How would he know that detail? I understand it's his claim and I understand it's his burden of proof, but it seems to me that it's entirely plausible that he would not know how they came to find this out. I mean, she goes to the hospital, she finds out she's pregnant. Next thing he knows, according to him, the neighborhood committee people and the birth control staff come to his girlfriend's place. How in the world would he know who made a call from the hospital to the staff? The fact that he doesn't know this strikes me as neither here nor there. It's certainly plausible that this petitioner did not know. However, it's also plausible that the way they found out, considering that he testified on page 171 of the record, that the same hospital that gave her this forced abortion was also the place where she went to find out her pregnancy. So we know that this is a hospital that does government forced abortions. So is your argument on this subject essentially that the petitioner failed to corroborate this claim and other claims? That is another element of the agency's decision, is that the petitioner did fail to corroborate several key aspects of his claim, despite the availability of evidence. And did the immigration judge give the petitioner notice and an opportunity to obtain the specific corroboration? On page 80 of the record and on page 84. On page 80, that's when the immigration judge reminds petitioner and his counsel that this is a Real ID Act case and that he is going to be required to discuss or to provide corroborating evidence in order to support his claim. This is at a prior hearing, it's not during the merits hearing. On page 84, the fact that this is a Real ID Act case and corroboration is going to be required again comes up. Then on page 109 and 110, a further hearing, there's a discussion of a 90-day continuance that petitioner was granted to supply additional documentary evidence that was not ultimately forthcoming. So no, the answer is that the immigration judge did not issue an order to go get these affidavits. However, petitioner was on notice that he was going to be required to corroborate the key aspects of his claim. The counsel, Judge Gould, if I could interject. Yes. At that point, I was under the impression that we had ninth circuit precedent that said in a Real ID Act case on which corroboration absence could be determinative. That if the agency or the IJ is going to require corroboration, they need to give the person notice of what it is they want to corroborate. And giving notice of what we want corroborated, like the story about the hospital or this or that, that's a little different than just being on notice that corroboration might be required. Judge Gould is referring, I think, to Wren v. Holder. Yes. So Wren v. Holder does say that an immigration judge is required to either give an opportunity for the petitioner to go get that corroborating evidence or for that individual to explain why that information was unavailable. I see that I'm out of time. Shall I finish answering this one? No, please continue. We'll give you time to answer questions. Okay. So it says either he has to give the time to go get the affidavits or he has to allow the alien to explain why those affidavits are unavailable. So in that case, yes, it was specific. I would say that in this case, petitioner stated that the evidence was unavailable. So he didn't ask, okay, can I go get these affidavits from my parents and from my sisters. But it's an affirmative duty, is it not, on the part of the immigration judge that the immigration judge has to give the applicant notice of what corroboration is required on what issue? That is what Ryan held. And we would just argue that in this case, petitioner stated that he couldn't get these affidavits and that they were unavailable. And the board disagreed with whether or not these affidavits were unavailable. But I see that my time is up. Counsel, I still have another question for you. That's sort of the technical one, I guess. But with regard to the agency decision, I thought that the agency specifically reasoned that it was implausible that the story could have occurred, because his claim was that it was a state-owned hospital. My question was whether you knew if there was anything in the record that says whether or not the hospital she went to was state-owned. And not that it does abortions that the state wants sometimes, but whether it's a state hospital. And also whether, do we have to address that? Because that was the rationale of the agency, as opposed to some other ground. Well, to answer your question, no, there's nothing that directly states that this is a state-run hospital. As to your question about whether or not you must find, you do not. Because if any of the reasons that the agency supplied is supported by substantial evidence, then this court may be able to find and may uphold the decision based on that. So if you just find that the omission exists in the record, it's supported in the record, then that's sufficient. Okay, thank you. That's helpful. Okay. I'm reminded of one time in front of the Seventh Circuit when I came up for rebuttal, and the chief judge said to me, regarding Judge Posner, you're not going to try to talk him out of this, are you? So I'm here on rebuttal. Do you have any questions for me? I have no questions. Okay, well, I would ask that this court remand the case to the BIA for them to do the proper fact-finding to Mr. Yee's claim of past persecution based upon being beaten and detained by the family planning officials for his resistance. Okay, thank you very much. Thank you.
judges: W. Fletcher, Gould, Christensen